IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

TRANSCRIPT OF PROCEEDINGS

```
----------------------------x
                            :
UNITED STATES OF AMERICA,    :        CRIMINAL ACTION
                            :        NO. 2:22-cr-00163-2
vs.                         :
                            :
SIVARAMAN SAMBASIVAM,        :        August 17, 2023
                            :
        Defendant.          :
                            :
----------------------------x
```

BOND HEARING

BEFORE THE HONORABLE IRENE C. BERGER
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the United States:          MR. JONATHAN TYLER STORAGE
                                MR. ERIK S. GOES
                                United States Attorney's Office
                                Suite 4000
                                300 Virginia Street, East
                                Charleston, WV  25301

For the Defendant:              MS. SUSAN M. ROBINSON
                                Thomas Combs & Spann
                                P.O. Box 3824
                                Charleston, WV  25338-3824

Court Reporter:                 Lisa A. Cook, RPR-RMR-CRR-FCRR

Proceedings recorded by mechanical stenography; transcript
produced by computer.

1                    P R O C E E D I N G S

2           THE CLERK:  The matter before the Court is the

3    *United States* vs. *Sambasivam*, Case Number 2:22-cr-163-2,

4    scheduled for bond hearing.

5           THE COURT:  Good afternoon, everyone.

6       Counsel, would you note your appearance for the record,

7    please.

8           MR. STORAGE:  Good afternoon, Your Honor.

9    Jonathan Storage on behalf of the Government.  And to my

10   right is -- or left is Erik Goes.

11          MS. ROBINSON:  Good afternoon, Your Honor.  Susan

12   Robinson on behalf of Mr. Sambasivam who is here present in

13   the courtroom.

14          THE COURT:  All right, counsel, we are here for a

15   hearing on the objections which the defendant has filed to

16   the recommendations of the Magistrate Judge regarding his

17   terms of release.

18      I, in setting this hearing, entered an order advising

19   the parties that I wanted you to be prepared to discuss the

20   relevant portions of Section 3142.

21      In order to give me some direction, or additional

22   direction, in looking at the statute and the defendant's

23   argument regarding conditions of release, and specifically

24   whether or not he should have his passport returned to him,

25   I want you to give some consideration to the language in

1   3142(b) and to let me know your position relative to that

2   initial paragraph in Section 3142(b).  And we'll start with

3   that here this afternoon.

4          MS. ROBINSON:  Thank you, Your Honor.  Do you want

5   to hear from Mr. Sambasivam first?

6          THE COURT:  That's fine.

7          MS. ROBINSON:  Your Honor, first, I would like to

8   reserve our objections to the Court's ruling concerning its

9   authority to continue Mr. Sambasivam on bond given the fact

10  that charges against him have been dismissed and he's no

11  longer pending any offense in the jurisdiction.

12         THE COURT:  I understand that and I certainly want

13  to preserve that to you.

14      In my reading of the statute, I took into consideration

15  the fact that the statute which allows for bail pending

16  appeal, it specifically mentions the statute regarding the

17  appeals which, of course, includes dismissals which can be

18  on appeal.

19      And that statute then, 3143, throws us back to 3142.

20  And it is my position that if we read it simply to be

21  inapplicable just because there are no charges, then we are

22  making a nullity out of the reference of 3143 to 3142.  And

23  I think that's set forth in the opinion.

24      But since you lawyers are here, I wanted to let you

25  know, at least to some extent, what my thinking was.  And I

1  certainly preserve an objection and exception for you to

2  that ruling.  The statute, in my opinion, could certainly be

3  less ambiguous, Ms. Robinson.

4        MS. ROBINSON:  Yes, Your Honor.

5     And I understand it's also the case that not many

6  defendants are in the position of Mr. Sambasivam and there

7  is little authority on the issue.

8     I would also like to, depending on the outcome of this

9  hearing, reserve the right or request the Court to allow us

10  to brief the constitutionality of that statute as applied to

11  Mr. Sambasivam.  In the event an appeal would need to be

12  taken, we'd like to be able to raise both of those issues at

13  the same time before the Fourth Circuit if necessary.

14        THE COURT:  All right.  You are, to some extent,

15  making reference to the comment in the footnote of my

16  opinion.

17        MS. ROBINSON:  That's correct, Your Honor.  We

18  believe that it does, as the Court has correctly noted,

19  continuation of Mr. Sambasivam on bond depriving him of the

20  liberty and ability to travel, including the ability to

21  travel to practice his religion, could impede, like as

22  specifically relevant to him and as applied to him, could

23  deprive him of certain constitutional rights.

24     And, so, that would be what we -- depending on the

25  outcome of this hearing, we may ask the Court to be able to

1   brief to the Court to take up before the Fourth Circuit.

2          THE COURT:  All right.  I understand.

3          MS. ROBINSON:  Specifically, with regard to

4   3142(b), Your Honor, Mr. Sambasivam believes that the United

5   States has not satisfied any of its burden to establish that

6   there needs to be any conditions imposed upon Mr. Sambasivam

7   at this point in time and, given the Court's hearing, other

8   than those that would be either released on his own

9   recognizance or released on an unsecured bond without

10   conditions.

11      Given the factors of (g), which I understand the Court

12   would consult, there's not a single factor that indicates

13   Mr. Sambasivam is a danger to the community or a flight

14   risk.

15      So, therefore, none of those first initial threshold

16   requirements have been met by the Government here to require

17   the hearing.

18      And then we move on to, assuming we get past that,

19   whether there's a judicial determination that additional

20   conditions need to be in place to ensure that Mr. Sambasivam

21   will reasonably appear before this Court in the unlikely

22   event, given the deferential standard that the appellate

23   court would have to give to this Court's ruling dismissing

24   his case, in the unlikely event that he would ever take --

25   he would ever face charges in this district again.

1          And if the Court would like, I don't know if you want

2     to hear from the Government first as to what they deem

3     relevant to believe he is unlikely to appear or whether you

4     want me to address all those factors first.

5          THE COURT:  I will let the Government respond

6     because we don't get to those factors until we get past that

7     initial language in 3142(b) in my opinion.

8          MS. ROBINSON:  I'm in agreement with that, Your

9     Honor.  I believe it's the burden of the United States to at

10    least make those threshold findings or to support those by

11    evidence.

12         THE COURT:  All right.

13    Mr. Storage.

14         MR. STORAGE:  So thank you, Your Honor.

15    I, I will first state that as it relates to the

16    constitutionality issue that Your Honor raised in her

17    footnote and the order setting this hearing that with Ms.

18    Robinson raising that objection here and making those

19    arguments, I don't necessarily know that briefing on the

20    constitutionality issue is necessary here if there's

21    ultimately going to be an appeal.

22    I think that that can be handled by the Fourth Circuit,

23    especially since Your Honor has already ruled that facially

24    on the statute there is, there is jurisdiction of this

25    matter presently.

1    So unless the Court would be prepared to rule that the

2    statute is simply unconstitutional, I don't think briefing

3    is, is necessary unless the Court would be leaning in that

4    direction.

5    As it relates to 3142(b), as a preliminary matter, I

6    will note that there is some ambiguity that I'd like to

7    address with the Court, one of which is that the judicial

8    officer shall order the pre-trial release of the person on

9    personal recognizance, or upon the execution of an unsecured

10    appearance bond in an amount specified by the Court, subject

11    to the condition that they will not commit certain crimes

12    and so on and so forth.

13    I would like to point out, though, that there isn't

14    really a standard in that paragraph that would suggest

15    whether the Court should do it on personal recognizance

16    versus an unsecured bond.  It seems to be discretion of the

17    Court.  And that if there is an unsecured bond and

18    conditions applied, the factors then that are later in the

19    statute need to come up.

20    So for me to even be able to address the standards in

21    (b), assuming that there would be an unsecured bond present,

22    I would have to go through the latter parts of the statute

23    to address, for instance, Paragraph (g), (b), (c), those

24    types of things.

25    So I would like to address the other factors that would

1   inform the Court on whether or not there is a, a reason to

2   have conditions or a combination of conditions that would

3   further make it likely that the defendant would appear for

4   any future proceedings before this Court.

5         THE COURT:  I understand your position, Mr.

6   Storage, to a certain extent.

7      The statute, as it reads -- and I'll put the language

8   on the record.

9      "The judicial officer shall order the pre-trial release

10  of the person on personal recognizance, or upon execution of

11  an unsecured appearance bond in an amount specified by the

12  Court, subject to the condition that the person not commit a

13  federal, state, or local crime during the period of release

14  and subject to the condition that the person cooperate in

15  the collection of a DNA sample from the person if the

16  collection of such a sample is authorized pursuant to

17  Section 3 of the DNA Analysis Backlog Elimination Act of

18  2000 unless --"

19     That's it.  Those are the -- that's the condition set

20  forth in the statute, that of not violating the law and

21  subjecting to the collection of DNA samples unless the

22  judicial officer determines that such release will not

23  reasonably assure the appearance of the person as required

24  or will endanger the safety of any other person or the

25  community.

1    And it is that initial portion of the statute that I

2    don't think has been addressed, from what I can tell, from

3    the Magistrate Court's order.

4    In other words, as I read that, we don't get to those

5    conditions unless there is a determination by the Court that

6    a personal recognizance or unsecured appearance bond with

7    the condition that he not violate the law and that he

8    subject himself to the collection of DNA samples.  Unless we

9    find that that's not sufficient, we don't get to the

10   conditions.

11        MR. STORAGE:  With, with respect, Your Honor, the

12   Government disagrees with that review.

13        THE COURT:  All right.

14        MR. STORAGE:  We would recommend that the default

15   would be personal recognizance or unsecured bond meeting the

16   conditions of what Your Honor has pointed out unless these

17   other conditions exist that would maybe raise doubts of the

18   judicial officer, in this case Your Honor, about whether or

19   not the defendant would appear.

20   I, as the Government's representative, have factors

21   that if I am able to produce them to you today I think would

22   render that "unless" active.

23        THE COURT:  Uh-huh.

24        MR. STORAGE:  So if I, if I can go forward with my

25   argument, I think you'll see that we will get past Paragraph

1  (b).

2       THE COURT:  All right.  I will hear you.  And I'm

3  not sure that we have a different understanding of the

4  statute.

5       Go ahead, please.

6       MR. STORAGE:  Okay.

7       As Your Honor is aware, appeal is pending before the

8  Fourth Circuit with respect to the Court's dismissal of 10

9  of the 14 criminal charges contained in the superseding

10  indictment.  And should the dismissal of those 10 charges be

11  affirmed on appeal, the dismissal would be with prejudice

12  and the defendant will cease to be a defendant in the

13  present proceedings.

14       The Court has already ruled in its Memorandum Opinion

15  and Order that 18, United States, Section 3143(c) requires

16  the application of Section 3142 factors under the present

17  circumstances where the Government has appealed as of right

18  under 18, United States Code, Section 3731.

19       When the Government appeals a ruling dismissing the

20  charges, the prosecution doesn't simply go away.  The

21  Government has a period of time to appeal, and the

22  Government has filed a notice of appeal preserving its

23  rights.

24       The Court did not enter an acquittal in this case.

25  Rather, the Government has exercised its right to pursue an

1    appeal seeking to preserve the charges.

2         While the Government observes that the prosecution of

3    the defendant is in a state of somewhat suspended animation

4    while the appeal plays out, the Government continues to

5    maintain the strong and lawful interest of vindicating the

6    charges returned by the grand jury in the appeals process.

7         The Government recognizes that the Court does have

8    broad discretion in how it applies the 3142 factors,

9    including the ability to remove all conditions of bond and

10   simply allow the defendant to be released on his own

11   recognizance.  But having evaluated the factors contained in

12   3142, the Government believes that an unsecured bond with

13   minimal conditions is appropriate.

14        While the Court has routinely imposed its own -- sorry.

15   While the Court has routinely imposed what its own local

16   rules refer to as standard terms and conditions for release

17   on bond, the Government concedes that the Government -- that

18   the defendant does not pose a safety risk to the community,

19   nor does he have substance abuse concerns or anything like

20   that.

21        Rather, the two conditions that the Government

22   advocates for today are the standard conditions that the

23   defendant not leave the country and that he not contact,

24   either directly or indirectly, any victim or potential

25   witnesses in this case except through counsel.

1       These two conditions are specifically enumerated in

2    Section 3142(c) as suggested acceptable options for the

3    Court to consider when imposing the least restrictive

4    condition or combination of conditions that will reasonably

5    assure the appearance of the defendant.

6       In evaluating what conditions or combination of

7    conditions will reasonably ensure the defendant will appear

8    for proceedings, the Court evaluates 3242(g) -- 3142(g).

9       The first of those factors is the nature and

10   circumstances of the charges against the defendant.  And

11   those charges are somewhat on a grand scale when considering

12   the economic impact his conduct has had on the victim

13   company Deloitte, on his employer, Sagitec, and on company

14   clients affected by the fallout of all of this.

15      For example, the defendant's conduct has spawned no

16   fewer than two federal civil lawsuits, one brought by

17   Deloitte in the District of Delaware, Case Number

18   1:23-cv-325, and a counter suit against Sagitec by the

19   Chicago's Teacher Pension Fund in the Northern District of

20   Illinois, 1:23-cv-1365.  The defendant, almost certainly,

21   will be a witness in those civil cases.

22      The weight of the evidence against the defendant is

23   also immense.  And with the Court's permission, the

24   Government offers to proffer five facts to support the

25   weight of the evidence factor if the Court would be so

1    inclined.

2              THE COURT:  Go ahead.

3              MR. STORAGE:  The Government proffers that

4    witnesses will testify that the defendant possessed Deloitte

5    source code and directed Sagitec employees to use that

6    software code to create a competing product.

7         Witnesses will testify that the defendant possessed an

8    external hard drive that contained the Deloitte code, along

9    with other proprietary data, and traveled to Pune, India

10   with it where it was uploaded to Sagitec servers for use in

11   the production of Sagitec's competing product.

12        Witnesses will testify that the defendant worked on the

13   Massachusetts UI project while he worked for Deloitte.  And

14   after he left Deloitte and began working for Deloitte's

15   competitor, Sagitec, the defendant maintained project log-in

16   credentials for the Massachusetts system which was being

17   serviced by Deloitte so that he could duplicate features

18   within the Massachusetts system for the benefit of Sagitec's

19   competing product.

20        Additionally, witnesses will testify that the defendant

21   shared those Massachusetts log-in credentials with other

22   employees of Sagitec to further his goals.

23        And, lastly, the Government also processes evidence of

24   the defendant working with David Minkkinen, the

25   co-defendant, to edit and revise a letter sent to the Office

1    of the Maryland Attorney General which contained material

2    lies and misstatements about the work he had performed on

3    the Maryland-West Virginia UI Consortium Project.

4         The defendant's personal characteristics support

5    minimal conditions pending appeal.  The defendant is a

6    person of substantial financial means as the Court can see

7    in the PSR.

8         Other than his two children, the United States doesn't

9    know of any other blood relatives that live in the United

10   States related to Mr. Sambasivam.  All, or a substantial

11   number, of his family members live in India.

12        And, most importantly, the possibility of the defendant

13   leaving for India once his passport is returned to him is

14   not hypothetical.  The defendant has stated to the Court in

15   his filings that he, in fact, does intend to travel to

16   India.

17        And, so, with all of that said, we believe that a

18   minimum set of conditions such as simply not leaving the

19   country pending appeal and not communicating with witnesses

20   or the victim, except through counsel pending appeal, are

21   the only two conditions the Government seeks at this time.

22   And we believe it's reasonable considering his substantial

23   ties to foreign countries and his significant financial

24   means as well.

25             THE COURT:  Mr. Storage, are you asking the

1   Court -- and I want to be up front with you and let you know

2   in my reading of the Magistrate's order I have some issue

3   with being put in a position of presuming almost that he is

4   somewhat of a flight risk simply because he has family

5   living in another country.

6        MR. STORAGE:  I understand that, Your Honor.  And

7   the Government wants to be careful here.  And as I stated in

8   the briefing, the Government isn't using the term "flight

9   risk," but we think that it is a factor that is listed in

10  the statute for consideration.

11       And the standard terms and conditions on release of

12  this Court, whether it's a person who lives in Nitro, West

13  Virginia, or in Charleston is that it's a standard condition

14  that the person's travel be restricted to the Southern

15  District of West Virginia unless otherwise directed by the

16  Court.

17       In this instance, Mr. Sambasivam's restriction to

18  travel is the entire continental United States.  Other than

19  not going to Alaska or Hawaii, he can travel freely for

20  business for his own personal, for his own personal

21  relaxation and leisure except going out of the country.

22       And while I recognize that as of today he has not shown

23  any attempt to flee, he has not, as far as we know, changed

24  anything relating to his finances or his ownership of

25  assets.

1      However, it is a statutory standard to consider.  We

2   believe that when you factor in his financial means, his

3   family ties, and the fact that he does intend to, in fact,

4   leave the country -- that's not a hypothetical, that he

5   wants his passport back so maybe he can go out of the

6   country.  He does, in fact, want to go out of the country.

7   I think that is a relevant thing for the Court to consider.

8           THE COURT:  The fact that, if I understand you

9   correctly, that you argue it to be a standard condition in

10   the district, does that not defeat the individualized

11   assessment that the Court should give to each individual

12   defendant in determining what, if any, condition should, in

13   fact, be imposed?

14           MR. STORAGE:  No, I do not, I do not think so.  I

15   think that the Court through its local rules has put the,

16   the bar and potential future defendants on notice that at

17   least as a starting point, restriction of travel is, is

18   assumed unless almost the defendant needs to show that

19   substantially he is not a flight risk.

20      What I am simply pointing out by bringing up the

21   standard conditions is that restriction of travel is almost

22   a given in 99 percent of cases before this Court.  And while

23   I understand that Mr. Sambasivam lives in a different

24   district, the Government has not tried to impede his travel

25   within the continental United States.  As far as I know, he

1   has had no difficulty with reporting to probation about his

2   travel.

3       And, so, we think that he has a freedom of movement

4   that is somewhat unusual in our district.  And, so, that's

5   simply what the Government would like to point out.

6           THE COURT:  All right.  Thank you, Mr. Storage.

7       Ms. Robinson.

8           MS. ROBINSON:  Your Honor, I do think that the

9   Government continues to confuse the standard here.  There is

10  no flight risk.  If they're going to establish a flight

11  risk, it has to be done by a preponderance of the evidence,

12  and not only that but a serious risk that the defendant will

13  flee the jurisdiction.

14      That's not what we're talking about here.  If that's

15  what we're talking about, then the Government needs to come

16  forward with some evidence, not just maybe raise a doubt

17  that he may not return if in the unlikely event the Fourth

18  Circuit reinstates the charges against him.

19      It is not enough for them to stand up here and say he

20  has relatives in India, he has financial means; therefore,

21  he's a flight risk.  That's simply not enough and that's one

22  standard.  That's, that's as to whether, you know, we're

23  going to go down the path of the flight risk.

24      There is under 3142(b) the question as to whether the

25  Government has shown any evidence that would lead the

1    judicial officer to believe that there is some likelihood, a

2    preponderance I would, I would argue, that he will not

3    appear as required by the Court.

4        Flight risk and non-appearance are two different

5    things.  And I think it's very important to keep those

6    separate and discuss those separately.  One doesn't bleed

7    over into the other.

8        I've heard several different things.  The Magistrate

9    Judge's order referenced a specter of a possibility of

10   non-appearance.  I also don't believe that that is the

11   correct standard.

12       The Bail Reform Act recognizes the presumption of

13   innocence a person retains when they're charged by

14   indictment with a criminal offense.  And the Bail Reform Act

15   recognizes that the Court should impose the least

16   restrictions upon an individual that will ensure a number of

17   different things.  And right now for this proceeding, we're

18   simply talking about that he will appear in this court

19   should the charges be reinstated.

20       The Government today, Your Honor, asked the defendant

21   whether it objected to a 45-day continuance for it to file

22   its opening brief with the Fourth Circuit.  That's an

23   indication that this appeal proceeding may drag on for a

24   long time.

25       We don't know how much longer Mr. Sambasivam will have

1    to be subject to some conditions of this Court not charged

2    with an offense.  All charges against him have been

3    dismissed.  So his freedom has been restricted and

4    maintains -- continues to be restricted with the Government

5    still not even prepared to file their opening brief on the

6    day that it's due.

7        I responded and asked if the Government was willing to

8    allow him to travel to India to practice his religion, to

9    see his extended family, including elderly aunts and elderly

10   uncles that he hasn't seen in over four years because of the

11   pandemic and because of the restrictions of this.  The

12   Government has not yet responded as to what their position

13   on that will be.

14       With regard to the nature and seriousness of the

15   offense against him, the statute speaks to violence, crime

16   of violence, terrorism, serious offenses that may cause

17   concern about an individual being a danger to the community.

18       There's no question -- you know, one, he's not

19   currently charged with an offense.  But the offenses that if

20   they did come back are not offenses of violence, not

21   offenses of terrorism, not offenses of the nature that would

22   require any further restrictions or conditions beyond a mere

23   personal recognizance or a bond unsecured without

24   conditions.

25       And I would, I would mention something to the Court.

1    Mr. Sambasivam has done nothing but comply with every single

2    condition of his bond to date.  He was placed on bond in

3    September of 2022.  Within four months -- and I will -- I

4    would like to make this as an exhibit, Your Honor, if I may

5    approach.  This is a letter to Mr. Sambasivam dated

6    January 24th, 2023, from Olivia Sanders, United States

7    Probation Officer, advising him that he has met the criteria

8    for placement in the district's lowest intensity supervision

9    caseload.  And if I may make that as an exhibit, Your Honor.

10            THE COURT:  All right.

11            MS. ROBINSON:  May I approach?

12            THE COURT:  Yes, ma'am.

13        For purposes of the record, it will be marked, Ms.

14   Robinson, as your Exhibit Number 1.

15            MS. ROBINSON:  Thank you, Your Honor.

16        He has complied to date with all conditions of bond.

17   And as the Court can see -- and I spoke to Ms. Sanders

18   yesterday and she confirmed that he's had no violations or

19   problems with him complying with his conditions from the

20   probation office.  He reports in Minnesota and neither

21   office has had any problems with him.

22        But, but with regard to the nature of his charges, he

23   knew what he was facing even before the indictment.  He had

24   counsel.  He talked to the agents, was told he was a target.

25   If he was going to flee the jurisdiction, he was not going

1    to appear, he would have done it before then.  He would have

2    done it before the United States reached over and indicted

3    him and, and took his passport and restricted his freedom.

4        He is here today and he has appeared at every single

5    hearing before Judge Aboulhosn where an appearance was

6    required by the Court.  He's appeared by video on those

7    hearings where video was allowed by the Court and by the --

8    some of those hearings were, in fact, all video for all

9    counsel and defendant.

10       He has never failed to show up.  He's never failed to

11   comply with the Court.  He, in fact, if these charges do

12   come back, will vigorously defend them to restore his

13   reputation that has been irreparably damaged by the

14   indictment that's already, you know, out there and against

15   him.

16       He has vigorously defended.  There is still currently

17   pending in front of this Court serious challenges to the

18   Government's indictment, its strength of its evidence which

19   Mr. Storage went over.  I beg to differ.  I don't think the

20   Government can prove that Mr. Sambasivam ever possessed any

21   property of Deloitte, proprietary, trade secret, or

22   otherwise.  He's vigorously defending those.  He has no

23   interest in ever not defending those.

24       With regard to his history and characteristics, I would

25   venture to guess he's been in the United States of America

1   and a United States citizen for almost as long as Mr.

2   Storage has been alive.  He's been here for about 32 years.

3       He is an equity partner in a very serious on-going

4   business.  He is married.  He's the father of two.  His two

5   children were born in the United States, are citizens of the

6   United States, live in Minnesota.

7       One is currently attending the University of Minnesota.

8   His daughter recently graduated from the University of

9   Minnesota, is an employee.  His wife is employed by the

10  State of Minnesota.  His core family, his life is here in

11  the United States of America.  He owns his home in

12  Minnesota.

13      With regard to the other factors in 3142, no criminal

14  history, no arrest record, no drug abuse, no mental health

15  issues, no history of failure to appear in front of any

16  court or any body.

17      As I mentioned earlier, he was not on paper prior to

18  being charged in the recent charge.  And if he was going to

19  flee, having been informed he was a target of a federal

20  indictment, he would have done so before the indictment was

21  ever brought.  There's never been any hint that he's ever

22  been a danger to the community.

23      And regarding, Your Honor, his ties to the United

24  States, they are exponentially stronger than any of the ties

25  he has in India.  He does have family there, of course, his

1   two brothers, his sister.  He has elderly aunts and uncles.

2   He also travels to India to practice his faith, which he

3   practices here in the United States as well.  But there are

4   holy and sacred temples, almost like pilgrimages, that he

5   would make routinely prior to the pandemic and prior to

6   being charged with the current offense.

7       We are asking that he is released, either put on, you

8   know, his own recognizance or an unsecured bond without any

9   conditions that would allow him to make that trip.  And I

10  think that if there is any deterrence whatsoever, no

11  deterrence could be stronger than the fact that failure to

12  appear could in and of itself be an additional crime and

13  subject him to imprisonment when, in fact, I don't think

14  these charges ever will.  So I believe that's, you know, one

15  of the strong deterrences here.

16      And for those reasons, I don't think that the

17  Government has established any basis whatsoever to restrict

18  Mr. Sambasivam for future travel.

19      May I have just a second?

20          THE COURT:  Yes, ma'am.

21  (Ms. Robinson and the defendant conferred off the

22  record after which the following occurred:)

23          MS. ROBINSON:  I would mention, Your Honor, prior

24  to the hearing -- I don't know if the Court had time to -- I

25  apologize for the late revisions, but we did provide the

24

1    Court and probation with a proposed itinerary for Mr.

2    Sambasivam's travel to India.

3              THE COURT:  I did review it.

4              MS. ROBINSON:  I'm sorry?

5              THE COURT:  I did review it.

6              MS. ROBINSON:  Thank you, Your Honor.

7        I would ask that the Court consider that which lays out

8    his purposes for visiting India which are, are so much more

9    reasonable and unlike the inference that Mr. Storage wants

10   to make with regard to his travel to India as it being some

11   way to evade the jurisdiction of this Court.  You know,

12   those reasons cannot, cannot be doubted.

13       I mean, they're just reality.  In real life he wants

14   to -- he had an uncle pass away.  He wants to pay his

15   respects to his aunt who is still living in their family.

16   He wants to visit the graves of his parents and, you know,

17   practice his faith.

18       The fact that he -- well, I just don't think the

19   Government has met their burden to place any restrictions on

20   his current travel.

21             THE COURT:  Ms. Robinson, are you asking that the

22   itinerary be made Exhibit 2?

23             MS. ROBINSON:  Your Honor, I would ask that we be

24   able to submit a redacted copy that maybe perhaps redacts

25   some of the names and --

1           THE COURT:  All right.

2           MS. ROBINSON:  But I would like to have it as part

3    of the record --

4           THE COURT:  All right.

5           MS. ROBINSON:  -- if you would allow me an

6    opportunity this afternoon to submit a redacted copy.

7           THE COURT:  That motion is granted and it will be

8    in the record marked as your Exhibit Number 2.

9           MS. ROBINSON:  Thank you, Your Honor.

10          THE COURT:  Mr. Storage, anything further, sir?

11          MR. STORAGE:  Very briefly, Your Honor.

12      As it relates to what Ms. Robinson has suggested is the

13   Government's burden, I submit to the Court that the

14   Government does not have a burden here, preponderance or

15   otherwise.

16      I think that there is a reason why Ms. Robinson is

17   emphatic about throwing around the term "flight risk" and so

18   on is because preponderance of the evidence standard and

19   flight risk considerations are all a part of detention

20   hearing standards.  That is under Paragraph (f) of 3142.

21      This is a bond hearing.  The Government is not asking

22   for detention.  We are not advocating that he is a flight

23   risk.

24      We are simply applying the 3142(b), (c), and (g)

25   factors as it relates to being released on bond or his own

1  recognizance.  It is the Court who makes the determination,

2  and it is the determination of the Court.  The Government

3  has no standard to meet here other than to provide

4  information relevant to those factors to the Court.  So I

5  submit that we have no burden.

6       THE COURT:  All right.  Thank you.

7  I will get you all a ruling fairly soon.

8  Anything further?

9       MR. STORAGE:  No, Your Honor.

10      MS. ROBINSON:  Yes, Your Honor.

11  In the event that the Court does consider favorably Mr.

12  Sambasivam's request that he be released from conditions

13  that restrict his travel, I would ask that the Court also

14  order the United States and probation to lift any potential

15  restrictions that may exist at the border so in the event if

16  he does travel, I believe there are certain notifications or

17  restrictions that may end up causing him to be detained

18  either entering or leaving the United States if those aren't

19  lifted.  So I would like to make sure that that, in fact,

20  does get lifted.

21  I would also note for the Court that Magistrate Judge

22  Aboulhosn, one of the restrictions that he left in place was

23  that Mr. Sambasivam cooperate with the United States

24  Probation Office by providing information.

25  The probation office in the Southern District of West

1    Virginia and as applied in Minnesota reads that as still

2    requiring Mr. Sambasivam to supply them with monthly

3    reports.

4         Obviously, that's a lower, I mean, you know, a lesser

5    burden on him, but that is still a requirement that we don't

6    believe that he should be subjected to specifically, you

7    know, perhaps certainly if there's a change in residence or

8    a change in conditions, you know, to notify probation.  But

9    I think that that is a condition that could be broadly read

10   or applied by probation in a way that's not intended by the

11   Court.

12        So just in the -- to the extent that there is specifics

13   in what is meant by cooperation with probation, I'd ask that

14   that be taken into consideration as well.

15             THE COURT:  All right.

16        Mr. Storage, anything you want to say on that last

17   issue which hasn't previously been covered?

18             MR. STORAGE:  No.  The Government has no objection

19   to any of the other terms and conditions on release on bond

20   to be dispensed with but for travel restriction and

21   communicating with witnesses and victims.

22             THE COURT:  You said that, Mr. Storage, in such a

23   tone that you thought even the Court should understand that

24   by now.  Is that correct?

25             MR. STORAGE:  To the extent that I came across

1  that way, I did not mean any disrespect to Your Honor, but,

2  yes.

3         THE COURT:  I'm just teasing.  You all have a good

4  afternoon.

5         MS. ROBINSON:  Thank you, Your Honor.

6    And just one -- I'm sorry.  One last thing with regard

7  to constitutionality.  I do believe that there would be a

8  chance that if the Court hasn't fully been briefed and that

9  hasn't been argued before the Court and the Court to

10 consider it that the Fourth Circuit won't take that up on

11 appeal.

12        THE COURT:  All right.  You all have a good

13 afternoon.

14        MS. ROBINSON:  Thank you, Your Honor.

15        MR. STORAGE:  Thank you, Your Honor.

16   (Proceedings concluded at 2:09 p.m.)

17

18

19

20

21

22

23

24

25

1          I, Lisa A. Cook, Official Reporter of the United

2    States District Court for the Southern District of West

3    Virginia, do hereby certify that the foregoing is a true and

4    correct transcript, to the best of my ability, from the

5    record of proceedings in the above-entitled matter.

6

7

8          s\Lisa A. Cook                    August 21, 2023

9             Reporter                            Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25